Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Barbara Huntimer*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Huntimer,<br><br>       Plaintiff,<br><br>    v.<br><br>The Prudential Insurance Company of America;<br>PSCU; PSCU Disability Insurance Plan,<br><br>       Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Barbara Huntimer (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.      Plaintiff is a resident of Maricopa County, Arizona.

3.      Upon information and belief, PSCU (hereinafter referred to as the "Company") sponsored, administered and purchased a group short and long term disability insurance policy which was fully insured by The Prudential Insurance Company of America (hereinafter referred to as "Prudential").   The specific Prudential short and long term disability group insurance policy is known as Group Policy No.: 51728 (hereinafter referred to as the "Policy").   The Company's purpose in sponsoring, administering and purchasing the Policy was to provide short and long term disability insurance for its employees.   Upon information and belief, the Prudential Policy may have been included in and part of an employee benefit plan, specifically named the PSCU Disability Insurance Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.   At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.      Upon information and belief, Prudential functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Prudential.

5.      Upon information and belief, Plaintiff alleges Prudential operated under a conflict of interest in evaluating her short and long term disability claims due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled

as well as the payor of benefits  Prudential's conflict existed in that if it found Plaintiff was disabled, it was then liable for the payment of her disability benefits.

6.     The Company, Prudential and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

7.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8.     Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to from the Plan and any other Company Plan, as a result of being found disabled in this action.

9.     After working for the Company as a loyal employee, Plaintiff became disabled on or about February 3, 2014, due to serious medical conditions and was unable to work in her designated occupation as a Contact Center Help Desk Representative.  Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10.     Following her disability, Plaintiff applied for short term disability benefits under the relevant Policy, which provides the following definition of disability:

"During the elimination period, you are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- you are not working at any job."

11.    The definition of disability pertaining to long term disability benefits is as follows:

You are disabled when Prudential determines that:
- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury;
- you are under the regular care of a doctor; and
- after the first 12 months of your disability you have a 20% or more loss in your monthly earnings due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:

- you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and
- you are under the regular care of a doctor.

12.    In support of her claims for short and long term disability benefits, Plaintiff submitted to Prudential medical records from her treating physicians which supported her allegation that she met the definition of disability as defined in the relevant Policy.

13.    In a letter dated April 9 2014, Prudential informed Plaintiff it was denying her claims for short and long term disability benefits.

14.    Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's April 9, 2014, denial and submitted additional medical documentation supporting her disability claim and entitlement to benefits from the relevant policy.

15.    As part of its review of Plaintiff's claims for disability benefits, Prudential obtained medical records only "paper reviews" of Plaintiff's claims from Milton Jay, Ed.D. and Leonid Topper, M.D., who are consulting physicians for the University Disability

-4-

Consortium (hereinafter "UDC").   As the attached interrogatory answers confirm (*See* Exhibit "A" to this Complaint), UDC has a long business relationship with the disability insurance industry by providing the type of medical records reviews as occurred in this case and Plaintiff alleges UDC derives a significant amount of its annual revenue from its relationship the industry.  As a result, Plaintiff alleges that in the review of her claims, UDC and/or the physicians it retained were not independent, objective or impartial with regard to the opinions they rendered regarding whether Plaintiff was disabled.

16.   Upon information and belief, Plaintiff believes Drs. Jay and Topper may be long time medical consultants for the disability insurance industry, UDC and/or Prudential. As a result, Plaintiff believes Drs. Jay and Topper may have an incentive to protect their own consulting relationships with the disability insurance industry, UDC and/or Prudential by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and/or Prudential and which supported the denial of Plaintiff's short and long term disability claims.

17.   Prudential informed Plaintiff in a letter dated June 18, 2014 that it was upholding its denial of her claims for short and long term disability benefits.

18.   Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Prudential's June 18, 2014 denial of her disability claims.

19.   In support of her claims for short and long term disability benefits, Plaintiff submitted to Prudential additional medical, vocational and lay witness evidence demonstrating she met any definition of disability set forth in the Policy.

20.   Plaintiff submitted to Prudential a narrative letter dated December 22, 2014 from her current treating board certified family physician, who opined, "Given her age,

history and nature of her condition, it is reasonable to assume she has been unable to work in her prior occupation as a Contact Help Desk Representative or any occupation since February 3, 2014 and will continue to be unable indefinitely."

21.     Further supporting her claim, Plaintiff submitted a September 13, 2014, evaluation from a medical professional who concluded after an extensive evaluation of Plaintiff and her medical conditions, "…it is probable that she will remain impaired and unable to work in any occupation on an indefinite basis."

22.     Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated January 8, 2015, who after reviewing Plaintiff's medical evidence and the definition of disability and interviewing Plaintiff concluded, "Thus, it is my professional opinion to a reasonable degree of vocational probability that [Plaintiff] meets the own and any occupation Definition of Disability in the Prudential policy and she is entitled to disability benefits on that policy."

23.     In addition to the medical records and reports submitted to Prudential, Plaintiff submitted two sworn affidavits from herself and her long-time friend and roommate, both confirmed Plaintiff is unable to work in any occupation and also that her medical condition had not improved in any way since her date of disability.

24.     During the administrative review of Plaintiff's claim, she was approved for and is receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

25.     The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of February 1, 2014.  On December 11, 2014, Plaintiff submitted to Prudential a copy of her November 3, 2014 Notice of Award from the SSA.   The evidence supporting Plaintiff's claim was so

persuasive that SSA found her disabled without her even needing to attend a hearing before an Administrative Law Judge.

26.     The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definitions of disability set forth in the Policy to obtain short term disability benefits, as well as the definition of disability set forth for long term disability benefits for the first 24 months.  SSA's definition of disability is substantially similar to the Policy's definition of disability set forth in the Policy to obtain long term disability benefits after the first 24 months of disability.  Therefore, the SSA's approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to the reasonableness and lawfulness of Prudential's decision to deny Plaintiff's benefits.   Plaintiff alleges Prudential did not apply the proper weight to SSA's approval as a result of it also failing to properly evaluate, compare and contrast the reasons why SSA approved her claim.

27.     As part of its review of Plaintiff's claims for short and long term disability benefits, Prudential again obtained medical records only "paper reviews" of Plaintiff's claims from Milton Jay, Ed.D. and Leonid Topper, M.D.

28.     Prudential committed a procedural violation pursuant to ERISA when it retained the same reviewing medical professionals, Drs. Jay and Topper, to review Plaintiff's claims at two separate levels of review. *See* 29 C.F.R § 2560.503-1(h)(3)(v).

29.     As alleged *supra,* Plaintiff believes Drs. Jay and Topper are long time medical consultants for the disability insurance industry and/or Prudential and may have an incentive to protect their own consulting relationships with the disability insurance industry and/or Prudential by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claims, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the

denial of Plaintiff's short and long term disability claims.

30.    In a letter dated December 17, 2014, in order to engage Prudential in a dialogue so she could perfect any alleged deficiencies in her claims, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Prudential and the opportunity to respond to these reviews as well as to provide them to her treating physicians for their response prior to Prudential rendering a determination in her claims.

31.    Prior to rendering its denials in Plaintiff's claims, Prudential never shared with Plaintiff the reports authored by Drs. Jay and Topper and never engaged Plaintiff or her treating medical providers in a dialogue so she could either respond to the reports and/or perfect her claim.  Prudential's failure to provide Plaintiff with the opportunity to respond to Drs. Jay and Topper's reports precluded a full and fair review pursuant to ERISA, its action is also an ERISA procedural violation and of Ninth Circuit case law.

32.    In a letter dated February 27, 2015, Prudential notified Plaintiff it had denied her claims for short and long term disability benefits under the Policy.  In the letter, Prudential also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

33.    Upon information and belief, Prudential's February 27, 2015 denial letter confirms it failed to provide a full and fair review, and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence.

34.    In evaluating Plaintiff's claims on appeal, Prudential had an obligation pursuant to ERISA to administer Plaintiff's claims "solely in her best interests and other participants" which it failed to do. [1]

35.    Prudential failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of her claims with regard to what evidence was necessary so Plaintiff could perfect her appeal and claims.  Prudential's failure to investigate the claims and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claims is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

36.    Plaintiff believes Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by retaining the same reviewing physicians to evaluate Plaintiff's claim on two separate levels of review; failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claims; failing to adequately consider the approval of Plaintiff's Social Security disability claim; failing to have her examined by a medical professional when the policy allowed for one; providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claims and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

37.     Plaintiff alleges the reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Prudential undertook as decision maker and payor of benefits and provided it with a financial incentive to deny her claims.

38.     Plaintiff is entitled to discovery regarding the Prudential's aforementioned conflicts of interest, UDC's and any individual who reviewed her claims and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of any conflict of interest and/or ERISA procedural violation which may have impacted or influenced Prudential's decisions to deny her claims.

39.     With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Prudential as referenced herein are so flagrant they justify *de novo* review.

40.     As a direct result of Prudential's decision to deny Plaintiff's disability claims, she has been injured and suffered damages in the form of lost short and long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan, any other Company Plan and/or the Company as a result of being found disabled.  Plaintiff believes other potential employee benefits may include

but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

41.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

42.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order requiring Defendants to pay Plaintiff her short term disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B.     For an Order requiring Defendants to pay Plaintiff her long term disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

C.     For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

D.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

E.     For such other and further relief as the Court deems just and proper.

DATED this 3rd day of June, 2015.

SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff